UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
―――――――――――――――――――――――――x

**JOEL KIRKHART,**

                Plaintiff      DOCKET

   -against-                **OPPOSITION TO DEFENDANTS'**
                                   **MOTION TO DISMISS**

**THE DEPARTMENT OF EDUCATION
OF THE CITY OF NEW YORK; MELISSA
AVILES-RAMOS, Chancellor; and KATHERINE
RODI, Director of Employee Relations,**

                Defendants
―――――――――――――――――――――――――x

       Plaintiff JOEL KIRKHART, ("Plaintiff") proceeding pro se, brings this action against the Defendants, the DEPARTMENT OF EDUCATION OF THE CITY OF NEW YORK, ("DOE"), MELISSA AVILES-RAMOS, Chancellor, and KATHERINE RODI, Director of Employee Relations, ("Defendants") and respectfully alleges as follows:

### PRELIMINARY STATEMENT

In this Section 1983 action the gravamen of this matter is the claim that Defendants deprived Plaintiff of his Constitutional property and liberty rights by wrongfully charging and terminating him without proper due process procedures mandated by his tenured status. See Complaint, pp. 16-20. Simultaneously, Defendants covered up their retaliation, prejudice and malicious prosecution against him after he submitted proof of his disability and asking for an accommodation at his Education Law §3020-a hearing.

1

In the Motion To Dismiss submitted here by Defendants continue to mischaracterize the errors of procedure Plaintiff cited in his Complaint concerning the Education Law §§3020 and 3020-a as well as his Constitutional rights of property and liberty as part of his employment as a public school teacher in New York City. All the arguments made by Defendants in their Motion are statements without facts, evidence, Law or Statute, and without contractual relevance. None of the arguments made are relevant or dispositive of Plaintiff's Complaint.

As the Education Law 3020-a hearings do not allow Constitutional issues to be heard or discussed, and as the Article 75 Appeal cannot discuss these either, this case presents no issues such as Res Judicata or Collateral Estoppel as claimed by Defendants in the Motion To Dismiss. This claim must be denied.

Defendants deliberately and knowingly violated public policy under color of law in order to terminate Plaintiff without honoring his Constitutional rights, and this constitutes causes of action for discrimination, retaliation, deprivation of Plaintiff's due process rights under the Fourteenth Amendment; Section 1983; the Tenure Law/Education Law §§3020 and 3020-a(2)(a); and mandated proper determination of probable cause. (See EXHIBIT 1 Rights of Tenured Teachers, Complaint). Defendants chose to ignore all these rights and procedures in order to go around the Constitution and terminate Plaintiff without just or probable cause. All arguments and Exhibits previously submitted to this Court in Plaintiff's Complaint are respectfully requested to be incorporated here by reference.

**DEFENDANTS INTENTIONALLY DENIED PLAINTIFFS' PROCEDURAL CONSTITUTIONAL DUE PROCESS UNDER THE 14^(TH) AMENDMENT**

*Tenure Law remains public policy and a Constitutional and property right in New York State and NYC.*

Plaintiff exhausted his administrative remedies although he was hampered by the roadblocks put into place by the Defendants' deliberate violation of procedural and substantive due process Laws. To start, Defendants claim that Plaintiff never proved that the charges he was served in his EDL Section 3020-a were false. Plaintiff says, read his testimony in his Article 75 transcripts. It's all there.

Tenured employees of the NYC Department of Education have Constitutional property and Liberty rights to their jobs. Cleveland v Loudermill (470 US 532 (1985)) was a landmark 1985 U.S. Supreme Court case that established that public employees with a property interest in their jobs are entitled to a "pre-termination" hearing, which requires notice of the charges and an opportunity to respond. The Court held that this minimal hearing, coupled with subsequent post-termination procedures, satisfies the due process requirements of the Fourteenth Amendment. This due process hearing is now defined by a different Law and procedure, under Education Law 3020 and 3020-a, protected by the U.S. Constitution as defining what "due process" is for tenured teachers. This ruling prevents public employees from being fired summarily without a chance to defend themselves.

Sadly however, the current charging and procedural process in New York City can on longer be called fair, unbiased or just. None have a proper determination of probable cause mandated under EDL §3020-a(2)(a).Defendants have set up EDL §3020-a hearings in such way as to prevent any consideration of Constitutional rights and procedure. Thus Plaintiff's Article 75 had no Constitutional claims because there are no Constitutional claims heard in §3020-a arbitration. See **EXHIBIT A**, the 3020-a Decision made by Arbitrator Nancy Faircloth Eischen in the Matter of Elmira City School District v Theresa Usak Armstrong, SED #6371, 2011.

In Plaintiff's matter, Arbitrator McCray refused to hear anything about his disability, saying that Plaintiff's doctor did not testify and he could not verify her signature on her report. This is absurd. In fact, Plaintiff's disabling actions were not considered because they were inconvenient, and were in conflict with Defendants' goal to fire Plaintiff in spite of any facts or evidence. The reason why Plaintiff's doctor did not testify is due to the fact that the Department's Attorney Ms. Kim called her, yelled at her, and threatened her.

During the COVID Mandate and mass terminations of any unvaccinated employees, Arbitrator McCray earned a lot of money as an Arbitrator for medical and religious for accommodation/exemption from vaccination. He worked at the time for Scheinman Arbitration and Mediation Services, Inc ("SAMS") denying all requests for religious or medical accommodations and ignoring TITLE VII as well as Human Rights Law, State and City,. See **EXHIBIT B**, Arb. McCray Decision for a teacher applying for an accommodation based upon her sincere religious beliefs.  The word "Denied" has no legal meaning under the circumstances. This is all part of a coordinated plan to frame an innocent employee in order to terminate that person without just cause. See Plaintiff's Article 75 Petition, and the Complaint ¶31, 43, 55, 57, 58, 60-70, 83, 104.  The Defendants decided the hearing before it began, and Plaintiff was charged with false claims which Arbitrator Daniel McCray enlarged to sexual deviance, showing bias and prejudice against Plaintiff.

A relevant fact is that SAMS and all the arbitration decisions made by Arbitrator McCray and all the other arbitrators who worked on the SAMS Arbitration on appeals for accommodations were struck down as unconstitutional in November 2021 by the Court of Appeals. See **EXHIBIT C**. Court Order, Kane v de Blasio et al.,  21-CV -7863 (VEC) and Keil v The City of New York et al., 2 l-CV-8773 (VEC).

The pandemic and subsequent implementation of a COVID Vaccine Mandate (CVM) in 2021 has, therefore, brought the undermining of rights to a fair hearing into the spotlight. Medical accommodations were, for the most part, denied to almost all NYCDOE employees who applied, in order to keep teaching without getting vaccinated. The Defendants did not give any tenured employees a hearing because they did not want to, and, shockingly, charged all those who remained without vaccination a "Problem Code" on their files so that they could be terminated. The goal was to fire as many tenured teachers as possible, exactly the same goal as the 3020-a hearing and procedure that Plaintiff complains about here. See:

**The City of New York and the NYC Department of Education Never Intended on Honoring Requests For Religious Exemptions From Getting the COVID Vaccine By Municipal Workers**
https://advocatz.com/2025/05/28/the-city-of-new-york-and-the-nyc-department-of-education-never-intended-on-honoring-requests-for-religious-exemptions-from-getting-the-covid-vaccine-by-municipal-workers/

**The New York City Department of Education, UFT, Problem Code, and Perpetual Fog Machine Continue To Prevent Unvaxxed Employees From Working**
https://advocatz.com/2023/02/12/the-new-york-city-department-of-education-problem-code-continues-to-prevent-unvaxxed-employees-from-working/

See the Problem Code documents. **EXHIBIT D, D(1).**

In the article above, the testimony by Defendant Rodi, Director of Employee Relations and the Office of Personnel Investigations ("Problem Code"), and also head of the 'General Committee' who denied all applications for accommodations, is key to the denial of Defendants' Motion To Dismiss in this matter:

"With further questioning, Rodi explains that the general committee members were under pressure to reopen in-person schooling and couldn't do so without replacing at least some of the DOE employees who were barred from entering school buildings. Rodi describes the flood of requests for accommodations the DOE received during the fall of 2021:

5

*We received it from teachers, from custodians, from school food workers, from principals, from assistant principals, from, you know, name the person, name the job. And the fact is that we needed to run a school system . . .*

She describes denying accommodation requests in order to "resign" employees so that they could be replaced:

*[T]he only option was [sic] had was to resign them from the system without any bias so that we could hire other teachers. Because, again, we had a school to run.*

Later [Attorney Austin] Graff questions Rodi about the details of what happened to each individual's request for an accommodation:

*Q. Okay. So when you received an application for religious exemption, what did you review to make a determination whether to grant or deny?*

*A. We made sure that the person had appropriately applied in the right area. A number of people would check religious exemption, but they were really looking for a medical exemption.*

*We also made sure that they actually submitted something with their application, because some people included blank sheets of paper. And, then, if it was a medical—if it was in the wrong place, we—we immediately advised them so that they could reapply or reapply in the right place. If it was a blank piece of paper, we immediately advised them so that they could submit appropriate documentation.*

*And then, other than that, we then—we reviewed to make sure they had submitted something to support, you know, that it was religious in nature. We didn't judge what it was. And even if it was just a piece of paper that they wrote out. And then we denied their request.*

Attorney Austin Graff said: " According to this description, the "individual review" the applicants received was simply a check to make sure they hadn't mistakenly submitted a blank piece of paper or a medical accommodation request."

Due process is the process due in name only. Defendants have no interest in honoring the rights

of a charged employee. Plaintiff here is guilty as charged because somebody – anybody (here,

some of his students) - said he was. Facts and evidence are not necessary in these arbitrations.

These actions by Defendants are deliberate, misleading and made in bad faith. Placing a Problem

Code on an employee's personnel file constitutes discipline, EDL §3020 and §3020-a is

triggered, with all Constitutional protections and procedures allowable under the 14th

Amendment. The damaged careers and life changes from the Problem Code are dire (see

6

EXHIBIT C Declaration of Barry Black) and permanent, unless a Judge Orders the Code removed. Plaintiff has asked for this relief here. Otherwise, he is permanently blocked from working in his former position for the DOE as he should because he was an amazing teacher, highly skilled at teaching. He is now taking medication as well.

In Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53 (2006) the U.S. Supreme Court ruled that Ms. White's suspension for 37 days from her job operating a forklift was retaliatory discrimination and a jury awarded her compensatory damages.

*"The anti-discrimination provision seeks a workplace where individuals are not discriminated against because of their status, while the anti-retaliation provision seeks to prevent an employer from interfering with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. To secure the first objective, Congress needed only to prohibit employment-related discrimination. But this would not achieve the second objective because it would not deter the many forms that effective retaliation can take, therefore failing to fully achieve the anti-retaliation provision's purpose of "[m]aintaining unfettered access to statutory remedial mechanisms," Robinson* v. *Shell Oil Co.,* 519 U. S. 337, 346."

Thus… the anti-retaliation provision is not limited to actions affecting employment terms and conditions. In Perry v Sindermann (408 U.S. 593 (1972)) the U.S. Supreme Court decided that Sindermann had alleged enough facts to show that he was entitled to some kind of process and that the lack of a contractual or tenure right taken alone did not defeat his claim that the nonrenewal of his contract violated the First and Fourteenth Amendments. While Sindermann did not have tenure *per se*, his length of service at his last institution (more than the four years mentioned as the probationary period for a full-time instructor in the "Policy Paper 1" guidelines), he had asserted that he had *de facto* tenure, giving him a property interest in his job such that it fell under the 14th Amendment protection. The court ruled that "the respondent must be given an opportunity to prove the legitimacy of his claim of such entitlement in light of the policies and practices of the institution. Proof of such a property interest would not, of course, entitle him to reinstatement. But such proof would obligate college officials to grant a hearing at

his request, where he could be informed of the grounds for his non-retention and challenge their sufficiency."

The Problem Code and Defendants' unwillingness to hear Plaintiff's arguments during the §3020-a hearing left permanent harm on him in that his salary and pension steps were permanently denied to him, unfairly and without Just or Probable cause. Plaintiff never waived his rights to these benefits. The DOE should never have proceeded with termination, as they could not proceed due to the un-waived procedural defect cited here (see, Hackett v. Milbank, Tweed, Hadley & McCloy, 86 N.Y.2d 146,154-55, 630 N.Y.S.2d 274,654 N.E.2d 95 [1995]). Fraudulent concealment of a secret waiver of the rights of tenured employees to the tenure law Education Law 3020-a(2)(a) and Constitutional rights of property and liberty by the NYC Department of Education cannot be sanctioned. The same can be said about the Problem Code.

In 2012 the UFT filed a PERB complaint against the NYC DOE on the issue of the secrecy of this Code. As part of that litigation, Katherine Rodi was deposed on November 3, 2015. Ms. Rodi described the procedure of placing an employee on the Code/flag due to misconduct. She testified that the information from the investigators was used to designate an employee as guilty of some heinous act, and therefore a Principal would not hire this applicant. She added that "No Respondent will ever see their flag". Defendants never gave any DOE employee information about, or notice of, a problem code on their personnel file.

The Decision of PERB case U-32479 (June 2022) was an Order that the DOE work with the UFT to reveal problem codes on personnel files of UFT members who can see what documents are accusing them of misconduct, and, if these documents are false, promptly remove them from the file. The Defendants have never complied. **EXHIBIT E**.

8

The DOE tries to prevent anyone from seeing their Problem Code, because they do not want to give any reasons for placing it on a person's personnel file. In this matter, Defendants placed a Problem Code on Plaintiff's personnel file and fingerprints when he was reassigned, almost a year before he started his §3020-a. He was guilty of misconduct for false unproven charges before his hearing started. In the case of Philomena Brennan, who filed an Article 78 to remove the problem code from her file, Supreme Court Judge Alice Schlesinger ordered the DOE to submit to the Court their procedures for removal of the Code. The DOE settled the case, and took Ms. Brennan immediately off the Code – all to keep the procedures secret. See Brennan v NYC Dep't of Education, Index No. 112977/2009, **EXHIBIT F**.

Additionally, this unlawful, secret procedure is not time-barred. In Taylor v. City of New York, 207 F. Supp. 3d 293 (S.D.N.Y. 2016) the court held that courts can consider conduct that occurred outside the statutory limitations period if it is part of an ongoing and systematic practice of discrimination. This is the continuing violation doctrine. Plaintiff argues here that his placement of the Problem Code has continued to haunt and harm him. He cannot work in NYC public schools, not with DOE vendors.

In the 5th Circuit, in National Railroad Passenger Corp. v. Morgan, the Supreme Court recognized a "continuing violations doctrine" under which acts of discrimination were considered part of "one continuing violation," such that an action would be timely if the last act were timely. But the 5th Circuit said that theory applied only to "hostile workplace" claims, which Nicholson had not pleaded. It concluded that "the act of discrimination that she alleges took place in 2021 … was merely a continuation of [the clubs'] original act of discrimination that she alleges took place in 2014, upon which the limitations period has already elapsed." See: https://www.scotusblog.com/2025/05/the-application-of-the-continuing-violations-doctrine-beyond-hostile-workplace-claims/

New York State Education Law §3020-a gave tenured public education employees protected job status and Constitutional rights to their employment since tenure rights were established for NYC teachers in 1897. Tenure remains public policy and a Constitutional and property right in New York State and NYC, and is also a human right not only in state Law, but also in employment contracts statewide. See the case of Kambouris v NYC Dep't of Education, Index No. 518863; Abramovich v. Board of Ed. of Central School Dist. No.1 of Town of Brookhaven and Smithtown 62 A.D.2d 252 [2d Dept. 1978] (holding that the public policy expressed in the tenure statutes is designed to protect individual teachers, as public servants, from being dismissed without a hearing once their competency has been demonstrated); McElroy v. Board of Educ. of Bellmore-Merrick Cent. High School Dist, 5 Misc.3d 321 [Sup Ct. Nassau County, 2004] (acknowledging purpose of statute is to protect tenured teachers from arbitrary discipline); Cardinale v NYC Department of Education, Index No. 85165/2017.

In order for a tenured educator to be taken off of his/her salary, there must be a probable cause hearing where the NYC DOE has the burden of proof. EDL §3020-a "provides the exclusive method of disciplining a tenured teacher in New York State. Tebordo v. Cold Spring Harbor Cent. School Dist., 126 A.D.2d 542, [2d Dept. 1987].

Unfortunately, Defendants' claims that Plaintiff had his due process honored at his hearing cannot be sustained as a matter of law see Mannix v Bd. of Ed. of City of New York, 21 NY2d 455 [1968] (holding that the employing board improperly terminated tenured teacher accused of not fulfilling a condition of employment by not providing the teacher with due process under EDL §3020-a ); Matter of Glass v. Board of Education, 21 A.D.2d 891 [1964] (finding tenured teacher entitled to EDL §3020-a hearing where board claimed teacher failed to meet a condition

10

of employment); Lynch v Nyquist, 41 AD2d 363, 365 [3d Dept. 1973] (stating that certification requirements cannot be used as means to erode the protection afforded to tenured teachers and that the regardless of the strength of the board's proof that the teacher was not actually certified it had to proceed pursuant to EDL §3020-a). A tenured teacher cannot be suspended without pay unless he or she has **been convicted** of specified crimes. EDL §3020-a[2][a][b](emphasis added). It follows by analogy, that Plaintiffs cannot be reassigned, taken off salary, or terminated based on speculation and mystery investigations The deprivation of constitutional rights is per se irreparable harm see Ferreyra v. Decker, 456 F.Supp, 549 [S.D.N.Y. 2020], Mitchell v. Cuomo, 748 F.2d 804, 806 [2d Cir. 1984]. The tenure statutes reflect the intent and purpose of the Legislature to protect educators who have successfully completed a probationary period from being disciplined summarily without the safeguards of Education Law § 3020-a. Holt v. Board of Educ. of Webutuck Cent. School Dist., 52 N.Y.2d 625 (1981) – but the changes to the EDL in NYC have made a mockery of due process and determination of Just and Probable Cause. In Plaintiff's case, Arbitrator Daniel McCray made a lot more money than the Law allowed. The first 5 days of hearing opened at 10 am and then McCray ordered everyone off record to "discuss" matters. Then he came back on the record at the end of the day, to close the record. Plaintiff made note of these days. McCray could bill for the entire day, $1400.00 even though he spent less than 30 minutes for these first hearing dates. (See Complaint, ¶112-113) This is the description of fraud and corruption:

"112. Additionally, arbitrators play with the hearings' timeline. If they want to make extra money, they can make a very secret deal where they start the hearing at 9:30AM or 10 am, and put on the record that at 10:30 everyone is going to "discuss settlement" or "go over discovery", so come back at 4pm or 4:30pm. Then the arbitrator can put into New York State Education Department – where the transcripts are not read – a claim to working throughout the entire 7-hour period, when indeed they have worked only a few minutes on the record. Thus instead of making $36,000 for a hearing, the arbitrator could double the amount and make $72,000. The DOE in

11

NYC turns a blind eye to this practice.
113. In this matter, Arbitrator McCray participated in this practice by opening the record for five (5) hearing dates, then went off the record to speak to the parties, do discovery, whatever. Everyone came back around 4:30pm to have McCray close the record."

See how Eleanor Glanstein changed her payment on her voucher in 2008. **EXHIBIT G.**

New York State Education Department isnot checking up on arbitrators who claim payment for days in hearing, or days spent in study/creating a decision. In Plaintiff's case, he argues that Arbitrator McCray and Defendants made a secret deal where he would pretend to hear the case for the full day, but not spend the time, and then they – Defendants – would get the decision they wanted, termination.

These hearings, 3020-a, take place throughout New York State. Yet only in NYC is the Respondent not permitted to pick their arbitrator. The Defendants and the UFT pick the arbitrator. The decision is pre-planned. It's a set up.

Defendants have not submitted any proof of their specious, deceptive and false claims that Plaintiff did not establish a prima facie case of medical retaliation and discrimination. In this Court, the Defendants' failure to accommodate has been and continues to be a winning claim. See Hill v The Department of Education 24-cv-3506-RPK-LB; Mumin v The City of New York et al., 23-cv-03932 (JLR) S.D.N.Y.; Hernandez v. The Richmond County District Attorney, et al., 24-CV-05790 (BMC); Masciarelli v New York City Department of Education, just to state a few out of many. In Di Capua v City of New York (Richmond County Supreme Court, Index No. 85035/2023), 10 employees of the NYC DOE won their religious exemption/accommodations, jobs, and backpay. Jennifer LaBarbera also won her job, backpay and religious accommodation/exemption despite her signing a waiver promising she would not challenge her resignation. Index No. 85001/2023.

12

Plaintiff's Complaint cites causes of action against the Defendants who, under color of law, denied him the due process he was entitled to under the Tenure Law, 42 U.S.C. § 1983, and Fourteenth Amendments to the United States Constitution, Civil Service Law Section 75(b), and Human Rights Law ("SHRL and CHRL"). Defendants have neither a legitimate nor compelling interest in exercising express and overt disability retaliation and discrimination. Plaintiff argues here that the hostility by Defendants toward the Plaintiff in this matter defeats neutrality at every level of review, which suggests pre-textual discrimination.

Supreme Court precedent has evolved significantly since *Jacobson v. Massachusetts* (197 U.S. 11 (1905), a U.S. Supreme Court case that upheld the authority of states to enforce compulsory vaccination laws based on their police power during public health emergencies. Since Jacobson, the Supreme Court has consistently applied strict scrutiny to medical accommodation claims, clarifying that if a medical accommodation policy is narrow enough that it might exclude even a few who might need it, it is unconstitutional on its face. See, e.g., Stenberg v. Carhart, 530 U.S. 914, 937 (2000); Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320 (2006). The Court now also expressly recognizes a fundamental right to refuse medical intervention, even lifesaving medical intervention. This right was first explicitly recognized in Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261, 269 (1990), wherein the Court recognized a due process liberty interest in refusing unwanted medical treatment based on the doctrine of informed consent and the commonlaw rule that forced medication equals battery. In recognizing this right, the Supreme Court noted, "no right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person." Id. at 269.

It is well-established that the Fourteenth Amendment "forbids the government to infringe

13

'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest. Washington v. Glucksberg, 521 U.S. 702, 721 (1997)

Defendants did not show as a matter of law that they could not have afforded the salary for Plaintiff and his medical issues/ accommodation. Indeed, the Jacobson Court itself specifically noted that even if based on the acknowledged police powers of a state, a public-health measure must always yield in case of conflict with any right which [the Constitution] gives or secures. The government may not deny a benefit to a person on a basis that infringes his constitutionally protected interests. (Perry v. Sinderman, 408 U.S. 593, 597 (1972). The unconstitutional conditions doctrine vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up. Koontz v. St. Johns River Water Mgmt Dist., 570 U.S.595, 604 (2013). Defendants' arguments in their Motion To Dismiss against granting Plaintiff's relief to be returned to his former employment without a Problem Code and putting him back in his job with backpay and benefits are baseless. The Motion must be denied.

### NOTICE OF CLAIM REQUIREMENTS ARE NOT APPLICABLE TO §1983 SUITS BROUGHT IN FEDERAL COURT and HUMAN RIGHTS LAWS HAVE A 3-YEAR STATUTE OF LIMITATIONS

Defendants wrote in their Motion that Plaintiff's claims had to be dismissed because they were time-barred due to Education Law §3813 and a 1-year statute of limitation. Defendants are wrong on the Law. Human Rights Laws in New York now have a 3-year statute of Limitations. On November 17, 2023, Governor Hochul signed State Assembly Bill A00501 into law, extending the statute of limitations for discrimination and retaliation claims brought under the New York State Human Rights Law ("NYSHRL") from one year to three years.

14

New York's Notice of Claim requirements were applicable to §1983 suits in state court but not federal court prior to Felder v. Casey, 487 U.S. 131, 108 S.Ct. 2302. See, e.g., Brandon v. Board of Education, 635 F.2d 971, 973 n. 2 (2d Cir. 1980), cert. denied, 454 U.S. 1123, 102 S.Ct. 970, 71 L.Ed.2d 109 (1981); Courtemanche v. Enlarged City School District, 686 F.Supp. 1025, 1032 (S.D.N.Y. 1988); Burroughs v. Holiday Inn, 621 F.Supp. 351, 353-55 (W.D.N.Y. 1985); Williams v. Allen, 616 F.Supp. 653, 656-59 (E.D.N.Y. 1985); Paschall v. Mayone, 454 F.Supp. 1289, 1298 (S.D.N.Y. 1978). Felder v. Casey noted that although the Supreme Court itself "ha[d] never passed on the question, the lower federal courts have all, with but one exception, concluded that notice-of-claim provisions are inapplicable to § 1983 actions brought in federal court." 487 U.S. at 140, 108 S.Ct. at 2307. In Brandon v. Board of Education, 635 F.2d at 973 n. 2, a ruling was upheld that compliance with the state's notice-of-claim provision was not a precondition to the district court action. Since the filing of a notice of claim was not a prerequisite to the federal-court suit, a municipality perforce could not require a delay of the commencement of a federal-court suit pending an examination based on such a notice. See Day v Moscow 955 F.2d 807 (2nd Cir 1992

Since an actionable claim under § 1983 against a county or municipality depends on a harm stemming from the municipality's "policy or custom," see Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978), a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a county "policy or custom….Where no single act is sufficiently decisive to enable a person to realize that he has suffered a compensable injury, the cause of action may not accrue until the wrong becomes apparent." 632 F.2d at 192-93. Cf. Eagleston, 41 F.3d at 871-72 (discussing possible

15

delay in accrual date based on when plaintiff is aware of a wrong for which damages may be recovered in a civil action).

Plaintiff did not know that he was placed on a problem code when he was reassigned. Defendants hid the information from him in order to terminate him. Only after Plaintiff sought working in a school setting and he was denied countless times, did he learn about the Problem Code on his personnel file which blocked him from getting hired. This court recognizes an equitable tolling doctrine in the context of § 1983 actions, and when a "defendant fraudulently conceals the wrong, the time [limit of the statute of limitations] does not begin running until the plaintiff discovers, or by the exercise of reasonable diligence should have discovered, the cause of action." Keating v. Carey, 706 F.2d 377, 382 (2d Cir. 1983). To take advantage of this doctrine, however, a plaintiff must submit non-conclusory evidence of a conspiracy or other fraudulent wrong which precluded his possible discovery of the harms that he suffered. See, e.g., Dory v. Ryan, 999 F.2d 679, 681 (2d Cir. 1993) (tolling statute of limitations until time when plaintiff received an affidavit from a witness at his trial detailing the existence of a conspiracy by state officials to present perjurious testimony against plaintiff), modified on other grounds, 25 F.3d 81 (2d Cir. 1994).

Thus, Plaintiffs' claims are not time barred, and Human Rights Law has, in any case, a 3-year statute of limitations. Defendants' Motion on this point must be dismissed.

## THE COURT SHOULD EXERCISE SUPPLEMENTAL JURISDICTION

The Court has the authority to exercise pendent jurisdiction over state law claims that stem from a "common nucleus of operative fact". Moore v. County of Suffolk, 851 F.Supp.2d 447,458 (E.D.N.Y. 2012). Constitutional claims are sufficient to support jurisdiction over pendent state law claims when the constitutional claim are not wholly insubstantial or obviously frivolous. Id.

16

Here, the Plaintiff's constitutional causes of action, namely age discrimination and violation of due process rights and violation of public policy under color of law, are sufficiently alleged within the Amended Complaint to allow for continued survival of the state law claims. Since the court has original jurisdiction to hear the federal claims asserted by Plaintiff, it should also exercise its right to supplemental jurisdiction to hear the state claims.

To prevail, Plaintiff need not show that the Defendants benefited by the deceit or that the Defendants colluded with the person who did benefit. An action for deceit requires that:

1) A false affirmation;

2) made by Defendant;

3) with scienter and intent to defraud the Plaintiff; and

4) Plaintiff was damaged by being terminated from his employment..

Kuelling v Roderick Lean Mfg. Co., 21 Bedell 78,183 N.Y. 78. 83, 75, N.E. 1098, 26 1100(N.Y. 1905)[1-4]; Delano v Rice, 23 A.D. 327, 329, 48 N.Y.S. 295 (N.Y. App. Div., 1st Dep't 1897)[3].

## **CONCLUSION**

It is clear that by deliberate indifference and bad faith, the Defendants enacted a scheme wherein any inconvenient truths are simply ignored, in the hope that a Judge will also overlook whatever claim the opposing party argues in their submissions. The City certainly holds no respect for rights or factual evidence. Thus Plaintiff continues to argue that he has a cause of action for pursuant to the 14th Amendment and statutory due process violations and that his requests for just and fair relief and compensation for his wrongful termination must be granted and Defendants' Motion To Dismiss denied in it's entirety. Plaintiff has suffered irreparable, devastating losses of income and good standing after Defendants acted under color of law before the arbitration began

17

by placing Plaintiff's social security number and fingerprints into the Problem Code database when Plaintiff was reassigned to a "rubber room" almost a year before the hearing began. He was already guilty of the charges before he was charged.

Dated: October 16, 2025

/s/Joel Kirkhart